BOOK 1994 PAGE 851

# BYLAWS

## Horizon House Condominium

### TABLE OF CONTENTS

**Article Number**

| | | |
|---|---|---|
| I | Identification of the Condominium and Definitions | 1 |
| | 1.1 Identification of the Condominium | 1 |
| | 1.2 Definitions | 1 |
| | | |
| II | Administration; Applicability | 1 |
| | 2.1 Administration | 1 |
| | 2.2 Applicability | 1 |
| | | |
| III | Unit Owners' Association | 2 |
| | 3.1 Qualification | 2 |
| | 3.2 Powers and Responsibilities | 2 |
| | 3.3 Place of Meetings | 2 |
| | 3.4 Annual Meeting | 2 |
| | 3.5 Special Meeting | 2 |
| | 3.6 Notices | 3 |
| | 3.7 Voting | 3 |
| | 3.8 Proxies | 3 |
| | 3.9 Quorum | 4 |
| | 3.10 Order of Business | 4 |
| | 3.11 Conduct of Meeting | 4 |
| | | |
| IV | Board of Directors | 4 |
| | 4.1 Powers and Duties | 4 |
| | 4.2 Managing Agent | 6 |
| | 4.3 Number of Directors and Initial Selection of Board | 6 |
| | 4.4 Election and Term of Office | 7 |
| | 4.5 Annual Meeting | 7 |
| | 4.6 Regular Meetings | 7 |
| | 4.7 Special Meeting | 7 |
| | 4.8 Waiver of Notice | 7 |
| | 4.9 Quorum | 8 |
| | 4.10 Vacancies | 8 |
| | 4.11 Removal of Directors | 8 |
| | 4.12 Compensation | 8 |
| | 4.13 Conduct of Meeting | 8 |
| | 4.14 Annual Report of the Board of Directors | 8 |
| | 4.15 Fidelity Bonds | 9 |
| | 4.16 Liability of the Board of Directors | 9 |
| | 4.17 Action Without Meeting | 9 |
| | 4.18 Common or Interested Directors | 9 |
| | 4.19 Board of Directors as Attorney-in-Fact | 10 |
| | | |
| V | Officers | 11 |
| | 5.1 Designation | 11 |
| | 5.2 Election of Officers | 11 |
| | 5.3 Removal of Officers; Vacancies | 11 |
| | 5.4 President | 11 |
| | 5.5 Vice President | 11 |
| | 5.6 Secretary | 11 |
| | 5.7 Treasurer | 12 |
| | 5.8 Compensation of Officers | 12 |
| | 5.9 Agreements, Contracts, Deeds, Checks | 12 |



**EXHIBIT**

**1**

Mansfield0073

Article Number                                                BOOK 1994 PAGE 852

VI      Operation of the Condominium . . . . . . . . . . . . . . . 12
        6.1     Determination of Common Expenses and
                Assessments Against Unit Owners . . . . . . . . . . 12
        6.2     Payment of Common Expenses . . . . . . . . . . . . . 15
        6.3     Collection of Assessments. . . . . . . . . . . . . . 15
        6.4     Statement of Unpaid Assessments . . . . . . . . . . 15
        6.5     Maintenance and Repair . . . . . . . . . . . . . . . 16
        6.6     Additions, Alterations or Improvements
                by the Association . . . . . . . . . . . . . . . . . 17
        6.7     Structural Additions, Alterations or
                Improvements by Unit Owners. . . . . . . . . . . . . 17
        6.8     Restrictions on Use of Units and
                Condominium. . . . . . . . . . . . . . . . . . . . . 17
        6.9     Right of Access . . . . . . . . . . . . . . . . . . 20
        6.10    Limitation of Liability . . . . . . . . . . . . . . 20

VII     Insurance, Destruction, Restoration, Condemnation
        and Distribution . . . . . . . . . . . . . . . . . . . . . 21
        7.1     Authority . . . . . . . . . . . . . . . . . . . . . 21
        7.2     Coverage . . . . . . . . . . . . . . . . . . . . . . 21
        7.3     Limitations . . . . . . . . . . . . . . . . . . . . 22
        7.4     Notice of Insurance Coverage . . . . . . . . . . . . 23
        7.5     Individual Policies . . . . . . . . . . . . . . . . 23
        7.6     Insurance Trustee . . . . . . . . . . . . . . . . . 23
        7.7     Covenants for Benefit of Mortgagee . . . . . . . . . 23
        7.8     Reconstruction . . . . . . . . . . . . . . . . . . . 24
        7.9     Condemnation . . . . . . . . . . . . . . . . . . . . 25
        7.10    Assessments if Insurance is Inadequate . . . . . . . 25
        7.11    Disbursements . . . . . . . . . . . . . . . . . . . 26
        7.12    Notification . . . . . . . . . . . . . . . . . . . . 26
        7.13    Premiums and Deductibles . . . . . . . . . . . . . . 26

VIII    Mortgages . . . . . . . . . . . . . . . . . . . . . . . . 26
        8.1     Notice to Board . . . . . . . . . . . . . . . . . . 26
        8.2     Notice of Unpaid Assessments . . . . . . . . . . . . 26
        8.3     Notice of Default . . . . . . . . . . . . . . . . . 26
        8.4     Examination of Books . . . . . . . . . . . . . . . . 27
        8.5     Notice of Meetings . . . . . . . . . . . . . . . . . 27

IX      Notice . . . . . . . . . . . . . . . . . . . . . . . . . . 27
        9.1     Manner of Notice . . . . . . . . . . . . . . . . . . 27
        9.2     Waiver of Notice . . . . . . . . . . . . . . . . . . 27

X       Amendment of Bylaws . . . . . . . . . . . . . . . . . . . 27
        10.1    Amendment of Bylaws . . . . . . . . . . . . . . . . 27
        10.2    Approval of Mortgagees . . . . . . . . . . . . . . . 28

XI      Compliance and Default . . . . . . . . . . . . . . . . . . 28
        11.1    Relief . . . . . . . . . . . . . . . . . . . . . . . 28
        11.2    Lien for Contributions . . . . . . . . . . . . . . . 30
        11.3    Information to be Furnished in the Event
                of Resale by Unit Owner . . . . . . . . . . . . . . 30

XII     Miscellaneous . . . . . . . . . . . . . . . . . . . . . . 31
        12.1    Compliance . . . . . . . . . . . . . . . . . . . . . 31
        12.2    Conflict . . . . . . . . . . . . . . . . . . . . . . 31
        12.3    Severability . . . . . . . . . . . . . . . . . . . . 32
        12.4    Waiver . . . . . . . . . . . . . . . . . . . . . . . 32
        12.5    Captions . . . . . . . . . . . . . . . . . . . . . . 32
        12.6    Gender, etc. . . . . . . . . . . . . . . . . . . . . 32
        12.7    Notice of Loss to or Taking of Common Elements . . 32

Mansfield0074

BYLAWS      BOOK 1994 PAGE 853

HORIZON HOUSE CONDOMINIUM

## ARTICLE I

### IDENTIFICATION OF THE CONDOMINIUM AND DEFINITIONS

1.1  Identification of the Condominium

A.   The name of the Condominium is:  Horizon House Condominium.  The address of the Condominium is 1300 Army-Navy Drive, Arlington, Virginia 22202.

B.   The Condominium was submitted to the provisions of the Act by a Declaration recorded simultaneously herewith. These Bylaws are adopted pursuant to the Condominium Act, Virginia Code §55-79.39 et seq. (the "Act") and provide for the self-government of the Condominium by the Unit Owners Association.

1.2  Definitions

Each of the following terms, as used in these Bylaws, shall have the same meaning as the meaning ascribed to it in Section 3 of the Condominium Declaration:  "Act"; "Association"; "Unit Owners' Association"; "Board of Directors"; "Building"; "Bylaws"; "Commercial Space"; "Common Elements"; "Common Expenses"; "Common Profits"; "Condominium"; "Condominium Act"; "Condominium Instruments"; "Condominium Plat"; "Condominium Plans"; Condominium Unit"; "Convertible Spaces"; "Declarant"; "Declaration"; "First Mortgagee"; "Fractional Interest"; "General Common Elements"; "Identifying Number"; "Land"; "Limited Common Elements"; "Parking Space"; "Par Value"; "Person"; "Record"; "Rules and Regulations"; "Unit"; "Unit Owner".

## ARTICLE II

### ADMINISTRATION; APPLICABILITY

2.1  Administration

The administration and management of the Condominium and the actions of the Unit Owners and the Unit Owners Association and its Board of Directors and officers shall be governed by these Bylaws.

2.2  Applicability

All present and future Unit Owners and their tenants, licensees, invitees, servants, agents, employees and any other person or persons who are permitted to use the Condominium shall be subject to these Bylaws and the other Condominium Instruments and to the Rules and Regulations of the Association.  Acquisition, rental or occupancy of a Unit shall constitute the Unit Owner's, tenant's and occupant's acceptance and ratification of, and the agreement to comply with, these Bylaws and other Condominium Instruments, and any Rules and Regulations now existing or hereafter adopted.

Mansfield0075

ARTICLE III

BOOK 1994 PAGE 854

UNIT OWNERS' ASSOCIATION

### 3.1  Qualification

All Unit Owners in the Condominium, acting as a group in accordance with the Act and the Condominium Instruments, shall constitute the Unit Owners' Association. Any Unit Owner, upon acquiring title to his Unit, shall automatically become a member of the Association and shall remain a member thereof until such time as his or her ownership of such Unit ceases for any reason, at which time such Unit Owner's membership in the Association shall automatically cease. A person who holds any interest in a Unit solely as security for the performance of an obligation shall not be a member of the Association.

### 3.2  Powers and Responsibilities

Pursuant to Section 55-79.73(b) of the Act, and except as otherwise expressly provided in these Bylaws or in the Declaration, the powers and responsibilities assigned by the Act to the Unit Owners' Association are delegated to the Board of Directors, as more particularly set forth in Article IV.

### 3.3  Place of Meetings

Meetings of the Association shall be held at such place as may be designated by the Board of Directors and stated in the notice of the meeting.

### 3.4  Annual Meeting

The first annual meeting of the Association shall be held at a time and place to be designated by the Board of Directors: (i) within two years from the date that the first Unit is conveyed or (ii) within 90 days after Units to which 75% of the Fractional Interests appertain have been conveyed, whichever date first occurs, or (iii) on such earlier date as may be established by the Board of Directors. Thereafter, an annual meeting of the Association shall be held on a date to be established by the Board of Directors, but not later than 30 days prior to the end of the fiscal year. The annual meeting of the Association shall be held for the election of directors and the conduct of such other business as may be properly brought before the meeting.

### 3.5  Special Meetings

A Special meeting of the Association may be called at any time in the interval between annual meetings by the President, or by resolution of the Board of Directors, or upon a petition signed and presented to the President or the Secretary by Unit Owners of Units to which not less than twenty-five percent (25%) of the Fractional Interests appertain. The notice of any special meeting shall state the time, place and purpose of such meeting. No business shall be transacted at a special meeting except as stated in the notice.

-2-

Mansfield0076

### 3.6  Notices

The Secretary shall send a notice of meeting of the Association to each Unit Owner at least 21 days in advance of an annual meeting and at least 7 days in advance of any other meeting. The notice shall state the time, place and purposes of the meeting. The notice shall be sent by United States mail to all Unit Owners of record at the address of their respective Units and to such other addresses as any of them may have designated to the Secretary in writing or hand-delivered by the Secretary. Placing the notice in the Unit Owner's mailbox or mail slot at the Condominium constitutes the hand-delivery of the notice, provided that the Secretary certifies in writing that such notice was delivered. The mailing or hand-delivery of a notice of meeting in the manner provided herein shall constitute service of notice.

### 3.7  Voting

Each Unit is allocated a number of votes in the Association equal to the Fractional Interest assigned to the Unit. A Unit Owner is entitled to cast the vote allocated to his Unit. Since a Unit Owner may be more than one person, if only one of such persons is present at a meeting of the Association, that person shall be entitled to cast the vote allocated to that Unit. But if more than one of such persons is present, the vote allocated to that Unit shall be cast only in accordance with the agreement of a majority of them (or, absent such agreement, such vote shall be divided equally among them), and such agreement shall be conclusively presumed if any one of them purports to cast the vote allocated to that Unit without protest being made forthwith by any of the others to the person presiding over the meeting. Except where a greater number is required by the Condominium Act, the Declaration, or these Bylaws, a majority of the votes represented at the beginning of a meeting by Unit Owners present in person or by proxy is required to adopt decisions at any meeting of the Association. If the Declarant owns or holds title to one or more Units, the Declarant shall have the right at any meeting of the Association to cast the votes to which each such Unit is entitled.

### 3.8  Proxies

The votes appertaining to any Unit may be cast pursuant to a proxy or proxies duly executed by or on behalf of the Unit Owner. Revocation of a proxy is not binding on the Association unless actual notice of the revocation is received by the officer presiding over the meeting. A proxy is not valid unless it is dated and signed by the Unit Owner or by a person having authority to execute deeds on behalf of the Unit Owner. A proxy shall terminate automatically upon the adjournment of the first meeting held on or after the date of the proxy. A Unit Owner may appoint any other Unit Owner, the Declarant, or the Managing Agent as his proxy, except that no person other than the Declarant or Managing Agent shall cast votes as a proxy for more than one Unit in addition to his own.

-3-

Mansfield0078

### 3.9 Quorum

The presence in person or by proxy of Unit Owners entitled to cast more than 25% of the votes in the Association shall constitute a quorum for the conduct of business.  A quorum shall be deemed to be present throughout a meeting of the Association until adjournment if persons entitled to cast more than 25% of the votes are present in person or by proxy at the beginning of such meeting.  If a meeting cannot be organized because a quorum has not attended, those present may recess the meeting from time to time until a quorum is present, when any business may be transacted that may have been transacted at the meeting as originally called.

### 3.10 Order of Business

The order of business at a meeting of the Association shall be as follows:  (i) proof of notice of meeting; (ii) proof of quorum; (iii) reading of minutes of preceding meeting; (iv) election of inspectors of election, if applicable; (v) election of directors, if applicable; (vi) reports of officers and committees; (vii) unfinished business; and (viii) new business.

### 3.11 Conduct of Meeting

The President shall preside at meetings of the Association and the Secretary shall keep the minutes of meetings.  The then current Roberts Rules of Order shall govern the conduct of all meetings of the Association when not in conflict with the Act or the Condominium Instruments.

### ARTICLE IV

### BOARD OF DIRECTORS

### 4.1 Powers and Duties

The Board of Directors is the executive and administrative entity designated to act for the Association in governing the Condominium, and is an "Executive Organ" within the meaning of Section 55.79-73 of the Act.  The affairs and business of the Association shall be governed by the Board of Directors.  The Board of Directors may delegate to a director or officer, subject to the continuing control of the Board of Directors, any matters relating to the duties of the Managing Agent.  The Board of Directors may exercise all powers of the Association except such as are by statute, by the Declaration, or by these Bylaws conferred upon or reserved to the Association.  In particular, but not by way of limitation, the Board of Directors shall have the power to:

A.    Prepare and adopt an annual budget for the Condominium.

B.    Make and collect assessments against the Unit Owners to defray the Common Expenses, establish the method of collecting such assessments from the Unit Owners, and establish the period of the installment payments of the annual assessment.  Unless otherwise determined by the Board of Directors, the annual assessment against each Unit Owner for his proportionate share of the Common Expenses shall be payable

-4-

Mansfield0079

BOOK 1994 PAGE 857

in equal monthly installments, each such installment to be due and payable in advance on the first day of each month.

C.   Provide for the operation, care, upkeep, maintenance and security of the Common Elements and for services to the Condominium.

D.   Designate, hire and dismiss the personnel necessary for the maintenance, operation, repair and replacements of the Common Elements, and, where appropriate, provide for the compensation of such personnel and for the purchase of equipment, supplies and material to be used by such personnel in the performance of their duties, which supplies and equipment shall be property of the Association.

E.   Make and amend Rules and Regulations respecting the use of the Condominium.

F.   Establish bank accounts for the Association and borrow money as necessary in connection with the operation, management, maintenance, or repair of the condominium, except that the total aggregate indebtedness outstanding from time to time shall not exceed fifty thousand dollars ($50,000.00) without the prior approval of the Association.

G.   Contract for the repair, additions, and improvements to, or alterations of, the Condominium and for the restoration of the Condominium, in accordance with the other provisions of these Bylaws.

H.   Enforce by legal means the provisions of the Declaration, these Bylaws and the Rules and Regulations and institute, maintain and defend proceedings and actions brought on behalf of or against the Association.

I.   Maintain insurance required by Article VII of these Bylaws.

J.   Pay the cost of services rendered to the Condominium for which the Association, as distinct from individual Unit Owners, is liable.

K.   Keep the books of the Association with detailed accounts of the receipts and expenditures affecting the Condominium, specifying all expenses incurred, including prepaid expenses.  The books and supporting vouchers and records shall be available for examination by the Unit Owners, their duly authorized agents or accountants or attorneys, during regular business hours at the time and in the manner set by the Board of Directors.  All books and records shall be kept in accordance with generally accepted accounting principles, and shall be audited at least once a year by an outside auditor employed by the Board of Directors, who shall not be a resident of the Condominium or a Unit Owner.  The cost of such audit shall be a Common Expense.

L.   Purchase Units on behalf of the Association at foreclosure or other judicial sale.

M.   Enforce obligations of Unit Owners, allocate Common Profits and Common Expenses, and take such other actions as may be necessary or proper for the sound management of the

-5-

Mansfield0080

• BOOK 1994 PAGE 858

Condominium.  The Board of Directors shall have the power to levy fines against Unit Owners for violations of the Rules and Regulations.  No fine may be levied for more than five dollars for any one violation; but for each day that a violation continues, after notice, it may be considered a separate violation.  Collection of fines may be enforced against a Unit Owner as if the fines were an assessment for Common Expenses owed by the Unit Owner.  If a Unit Owner persists in violating the Rules and Regulations, the Board of Directors may require him to post bond, satisfactory to it, to secure future compliance with the Rules and Regulations.

N.  Do such things and acts (not inconsistent with the Condominium Act and with the Condominium Instruments) which may be authorized by the Association.

O.  Lease, grant licenses, easements, rights-of-way and other rights of use in all or part of the Common Elements of the Condominium.

### 4.2  Managing Agent

The Board of Directors shall employ for the Association a professional Managing Agent, at a compensation fixed by the Board of Directors to perform such duties as the Board of Directors may authorize, including, but not limited to, the duties listed in paragraphs A,C,D,G,I,J,K,M,N and O of Section 4.1.  The Board of Directors may delegate to the Managing Agent all of the powers and duties delegated to the Board of Directors by these Bylaws other than the powers and duties set forth in paragraphs B,E,F,H and L of Section 4.1.  The Board of Directors shall not be liable for any omission or improper exercises by the Managing Agent for any such duty, power or function delegated.  Any agreement with the Managing Agent shall be in writing and shall provide that it may be terminated, with cause, on 30 days' written notice, and without cause on 90 days' notice, without payment of a termination fee. The term of any such agreement shall not exceed one year.  The Declarant, or an affiliate of the Declarant, may be employed as Managing Agent.  After the initial Managing Agent has been named, the Board of Directors shall not employ any new Managing Agent without 30 days' written notice to the First Mortgagees. The Association may not terminate professional management and assume self-management without first obtaining the prior written consent of 75% of the First Mortgagees (based on one vote for each mortgage owned).

### 4.3  Number of Directors and Initial Selection of Board

The number of directors which constitutes the initial Board of Directors is three.  The initial Board of Directors shall be comprised of three persons appointed by the Declarant and shall serve (i) until the election of directors at the first annual meeting of the Association or (ii) until a special meeting is held for the purpose of electing directors as provided in Article III.  The members of the Board of Directors shall be Unit Owners who are residents of the Condominium, except that Declarant's appointees need not be Unit Owners or residents of the Condominium, and the Declarant shall have the right in its sole discretion to replace such directors and to designate their successors if vacancies occur for any reason. From and after the first annual meeting of the Association, the

-6-

Mansfield0081

number of directors which constitutes the entire Board of
Directors shall be not less than three nor more than seven
members.

### 4.4  Election and Term of Office

The Board of Directors shall be elected at the annual
meeting of the Association, to serve until the next annual
meeting of the Association and until their successors have been
elected and qualified.  Notwithstanding anything contained in
these Bylaws to the contrary, until the first annual meeting of
the Association the Declarant shall have the right to select a
majority of the Board of Directors and to fill any vacancy
occurring from the death, resignation or removal of a director
by the Declarant or the Association.  At the first annual
meeting, the term of office of the Director receiving the
greatest number of votes shall be fixed for three (3) years.
The term of office of the director receiving the second
greatest number of votes shall be two (2) years and the term of
office of the other Directors shall be fixed for one (1) year.
At the expiration of the initial term of office of each
respective Director, his/her successor shall be elected to
serve a term of three (3) years.  In the alternative, the Unit
Owners may by resolution duly made and adopted at an annual
meeting, resolve to fix the term of each Director elected at
any such meeting at two (2) years.  Directors shall hold office
until their successors have been elected and hold their first
regular meeting.  There shall be no cumulative voting.

### 4.5  Annual Meeting

An annual organizational meeting of the Board of Directors
shall be held within 10 days after the annual meeting of the
Association.  No notice shall be necessary to the newly elected
directors in order legally to constitute such meeting,
providing a majority of the entire Board is present at the
meeting.

### 4.6  Regular Meetings

Regular meetings of the Board of Directors shall be held
at such time and place as shall be determined from time to time
by the Board of Directors, but at least one meeting shall be
held in each quarter of each fiscal year.  Notice of regular
meetings of the Board of Directors shall be given to each
director, personally or by mail or telephone, at least 72 hours
prior to the time of the meetings.

### 4.7  Special Meetings

Special meetings of the Board of Directors may be called
by the President on 72 hours' notice to each director.  Such
notice shall be given personally or by mail or telephone, and
shall state the time, place and purpose of the meeting.
Special meetings of the Board of Directors shall be called by
the President or Secretary in like manner and on like notice on
the written request of at least two directors.

### 4.8  Waiver of Notice

Notice of a meeting of the Board of Directors may be
waived in writing by a director either before or after the

Mansfield0082

BOOK 1994 PAGE 860

meeting.  Attendance at a meeting constitutes waiver of notice of that meeting.

### 4.9  Quorum

A majority of the entire Board of Directors shall constitute a quorum for a meeting of the Board of Directors. The votes of a majority of the members present at a meeting at which a quorum is present shall constitute the decision of the Board of Directors.  If less than a quorum is present at a meeting, the majority of those present may adjourn the meeting to a designated time and place.  An adjourned meeting may be held as designated without further notice, and when a quorum is present any business may be transacted which might have been transacted at the meeting as originally called.

### 4.10  Vacancies

A vacancy on the Board of Directors caused by any reason, other than removal of a Director by a vote of the Association, shall be filled by a vote of the majority of the remaining directors, even though they constitute less than a quorum; and each person so elected shall serve until the next annual meeting of the Association and until his successor is elected. A vacancy occurring on the Board of Directors by reason of an increase in the number of directors constituting the entire Board of Directors or by reason of the removal of a director by a vote of the Association shall be filled by the Association at an annual meeting or at a special meeting called for that purpose.

### 4.11  Removal of Directors

A director may be removed with or without cause, and his or her successor elected then and there or thereafter, at a meeting of the Association at which a quorum is present, by a plurality of the votes cast.  Any director whose removal has been proposed shall be given at least 10 days' notice of the calling of the meeting and the purpose thereof, and opportunity to be heard at the meeting.

### 4.12  Compensation

A director shall not receive compensation from the Condominium for serving on the Board of Directors, but a Director may be reimbursed for actual out-of-pocket expenses incurred by him/her in the proper performance of his/her duties.

### 4.13  Conduct of Meeting

The President shall preside at meetings of the Board of Directors and the Secretary shall keep the minutes of the proceedings.

### 4.14  Annual Report of the Board of Directors

The Board of Directors shall present at each annual meeting of the Association, and when called for by vote of the Association at any special meeting of the Association, a complete statement of the operational and financial condition of the Condominium.

-8-

Mansfield0077

BOOK 1994 PAGE 861

### 4.15 Fidelity Bonds

The Board of Directors shall require that all directors, officers, trustees, volunteers, agents (including the Managing Agent), and employees of the Association handling or responsible for funds furnish adequate fidelity bonds or insurance. The fidelity bonds or insurance shall designate the Association as a named insured and, if obtainable, shall be written in an amount sufficient to provide protection which shall be not less than one-half the Association's estimated annual operating expenses and reserves. The premiums on such fidelity bonds or insurance shall constitute a Common Expense.

### 4.16 Liability of the Board of Directors

The directors shall not be liable to the Association or to the Unit Owners for mistakes of judgment or for negligence not amounting to willful misconduct or bad faith. The Unit Owners shall indemnify and hold harmless each of the directors from and against all contractual liability to others arising out of contracts made by the Board of Directors on behalf of the Association or the Unit Owners unless such contract was made in bad faith or contrary to the provisions of the Condominium Instruments. The directors shall not be personally liable for contracts made by them on behalf of the Association. The liability of any Unit Owner arising out of any contract made by the Board of Directors or arising out of the indemnification of the directors shall be limited to that proportion of the total liability thereunder as the Par Value of his Unit bears to the aggregate Par Values of all the Units. The Association shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding by reason of the fact that he is or was a director or officer of the Association against expenses (including attorney's fees), judgments, fines and amounts paid in settlement incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in, or not opposed to, the best interests of the Association; provided however, that indemnification shall be only to the extent that such person is not otherwise covered by insurance. The provisions of this paragraph shall also apply to each officer of the Association.

### 4.17 Action Without Meeting

Any action required or permitted to be taken by the Board of Directors at any meeting may be taken without a meeting if all of the members of the Board of Directors shall individually or collectively consent in writing to such action. Such written consent or consents shall be filed with the minutes of the proceedings of the Board of Directors.

### 4.18 Common or Interested Directors

A.   The Directors shall exercise their powers and duties in good faith and with a view to the interests of the Association and consistent with the purposes set forth in the Declaration.

-9-

Mansfield0083

BOOK 1994 PAGE 862

B.   No contract or other transaction between the
Association and one or more of its Directors, or between the
Association and any corporation, firm, entity or association in
which one or more of the Directors are directors or officers or
are pecuniarily or otherwise interested, shall be either void
or voidable because such Director or Directors are present at
the meeting of the Board of Directors or any committee thereof
which authorizes or approves the contract or transaction, if
any of the conditions specified in any of the following
subparagraphs exist:

(1)  The fact of the common directorate or
interest is disclosed or known to the Board of Directors or a
majority thereof and noted in the minutes, and the Board of
Directors authorizes, approves or ratifies such contract or
transaction in good faith by a vote sufficient for the purpose;
or

(2)  The fact of the common directorate or
interest is disclosed or known to the Unit Owners, or a
majority thereof, and they approve or ratify the contract or
transaction in good faith by a vote sufficient for the purpose;
or

(3)  The contract or transaction is commercially
reasonable to the Association at the time that it is
authorized, ratified, approved or executed.

C.   Common or interested Directors may be counted in
determining the presence of a quorum at any meeting of the
Board of Directors or committee thereof which authorizes,
approves or ratifies any contract or transaction.  Such
Directors may vote thereat to authorize any contract or
transaction with like force and effect as if they were not
common or interested Directors or officers of such other
corporation or were not so interested.

4.19  Board of Directors as Attorney-In-Fact

The Board of Directors is hereby irrevocably appointed as
attorney-in-fact for the Unit Owners of all of the Units and
for each of them, to manage, control and deal with the
interests of such Unit Owners in the Common Elements of the
Condominium so as to permit the Board of Directors to fulfill
all of its powers, functions and duties under the provisions of
the Act, the Declaration and these Bylaws, and to exercise all
of its rights thereunder and to deal with the Building in case
of destruction and the proceeds of any insurance indemnity as
hereinafter provided.  This power shall include, but shall not
be limited to, the right to grant easements and licenses from
time to time affecting the Common Elements with respect to
sewer lines, water lines, electrical cables, telephone cables,
gas lines, storm drains, underground conduits, or such other
purposes related to the provision of public utilities or as may
be considered necessary or appropriate by the Board of
Directors for the preservation of the health, safety,
convenience or welfare of the Unit Owners of the Units.  The
foregoing shall be deemed to be a power coupled with an
interest, and the acceptance by any person or entity of any
interest in any Unit shall constitute an appointment of the
Board of Directors as attorney-in-fact, as aforesaid.

-10-

Mansfield0084

BOOK 1994 PAGE 863

This power shall be in addition to any authority to grant easements or licenses given to the Board of Directors in the Act, in the Declaration or in these Bylaws.

ARTICLE V

OFFICERS

## 5.1  Designation

The principal officers of the Association are a President, a Vice President, a Secretary and a Treasurer. The Board of Directors may appoint assistant secretaries and an assistant treasurer. With the exception of the President, no officer need be a member of the Board of Directors. Two or more offices may be held by the same person, except that the President shall not hold any other office. Officers must be Unit Owners and residents of the Condominium, except during the period when the Board of Directors consists only of the three Directors appointed by Declarant.

## 5.2  Election of Officers

The officers of the Association shall be elected annually by the Board of Directors at its annual meeting and shall hold office at the pleasure of the Board of Directors.

## 5.3  Removal of Officers; Vacancies

An officer may be removed by the Board of Directors with or without cause by the affirmative vote of a majority of the entire Board of Directors.

## 5.4  President

The President is the chief executive officer of the Association; he shall preside at meetings of the Association and the Board of Directors and shall be an ex-officio member of all committees; he shall have general and active management of the business of the Association, subject to the control of the Board of Directors, and shall see that all orders and resolutions of the Board of Directors are carried into effect. The President must be a member of the Board of Directors.

## 5.5  Vice President

The Vice President shall perform the duties and exercise the powers of the President in the absence or disability of the President and shall perform such other duties as the Board of Directors may prescribe.

## 5.6  Secretary

The Secretary shall attend all meetings of the Board of Directors and the Association, and shall record the voting and the minutes of all proceedings in a book to be kept by him for the purpose. He shall give notice of meetings of the Association and the Board of Directors, and shall perform such other duties as may be prescribed by the Board of Directors or the President. The Secretary shall compile and keep current at the principal office of the Condominium a complete record of

-11-

Mansfield0085

the Unit Owners and their last known post office addresses.
This record of Unit Owners shall be open to inspection by all
Unit Owners at reasonable hours during regular business days.
The Secretary shall also keep current and retain custody of the
minute books of the proceedings of the Association and the
Board of Directors.  An assistant secretary shall perform the
duties and exercise the powers of the Secretary in the absence
or disability of the Secretary and shall perform such other
duties as the Board of Directors may prescribe.

### 5.7   Treasurer

The Treasurer shall have custody of all funds and
securities except those funds which are placed under the
control of the Managing Agent, and, with the assistance of the
Managing Agent, shall keep full and accurate records of
receipts and disbursements and shall deposit all monies and
other valuable effects in such depositories as may be
designated by the Board of Directors.  He shall disburse funds
as ordered by the Board of Directors, taking proper vouchers
for such disbursements, and shall render to the President and
the Board of Directors, at the regular meetings of the Board of
Directors, or whenever they may require, an account of all of
his transactions as Treasurer and of the financial condition of
the Association.  The Assistant Treasurer shall perform the
duties and exercise the powers of the Treasurer in the absence
or disability of the Treasurer and shall perform such other
duties as the Board of Directors may prescribe.

### 5.8   Compensation of Officers

No officer shall receive any compensation from the
Association for acting as such, but each shall be reimbursed
for reasonable and actual out-of-pocket expenses incurred by
him/her in the performance of his/her duties.

### 5.9   Agreements, Contracts, Deeds, Checks

All agreements, contracts, deeds, leases, checks and other
instruments of the Association for expenditures or obligations
of over $800 shall be executed by any two officers of the
Association or by such other person or persons as may be
designated by the Board of Directors.  All instruments for
expenditures or obligations of $800 or less may be executed by
any one officer of the Association or by such other person as
may be designated by the Board of Directors.

### ARTICLE VI

### OPERATION OF THE CONDOMINIUM

### 6.1   Determination of Common Expenses and Assessments Against Unit Owners

A.   Fiscal Year.  The fiscal year of the Condominium
is the calendar year; provided however, that the fiscal year
may be changed by the Board of Directors at their discretion.

B.   Annual Budget.  On or before a date which is not
less than 15 days prior to the end of each fiscal year, the
Board of Directors shall adopt an annual budget for the
Condominium for the succeeding fiscal year (hereinafter called

-12-

Mansfield0086

BOOK 1994 PAGE 865

the "Annual Budget"). The Annual Budget shall contain an estimate of the amount necessary to pay the Common Expenses for the applicable fiscal year in a reasonably itemized form and a statement of the amount of the Common Expenses payable by each Unit Owner. Common Expenses shall include the amounts necessary to create and maintain the reasonable reserves authorized by Section 6.1.D. The Board of Directors shall send to each Unit Owner at least 10 days prior to the commencement of each fiscal year a copy of the Annual Budget for the fiscal year.

C.   Assessment and Payment of Common Expenses. The total amount of the estimated funds required to pay the Common Expenses of the Condominium set forth in the Annual Budget adopted by the Board of Directors for the fiscal year shall be assessed against each Unit in proportion to the Fractional Interest of the Unit, and shall be a lien against such Unit as of the first day of the fiscal year to which such Annual Budget applies. A Unit Owner shall be personally liable for all lawful assessments, or installments thereof, levied against his Condominium Unit which become due while he is the owner of a Unit; and this liability of the Unit Owner is in addition to the lien for assessments in favor of the Association on the Condominium Unit created by the Act. On or before the first day of each fiscal year, and on the first day of each of the succeeding 11 months in such fiscal year, each Unit Owner shall be obligated to pay to the Board of Directors or the Managing Agent (as determined by the Board of Directors), one-twelfth of the assessment for such fiscal year. Within 90 days after the end of each fiscal year, the Board of Directors shall send to each Unit Owner an itemized accounting of the Common Expenses actually incurred for such fiscal year, together with an itemized statement of the amounts collected pursuant to the assessment adopted by the Board of Directors for such fiscal year, any delinquencies in payment of assessments, the amount of any surplus or deficit and the amount of the reserves. Common Profits in excess of Common Expenses (including reserves) as at the end of a fiscal year shall be credited to reserves as determined by the Board of Directors. The initial capital contribution by each Unit Owner equal to two month's assessment and paid by the Unit Owner upon the purchase of his Unit from the Declarant shall be deemed to be funds obtained by assessment under this Paragraph C.

D.   Reserve Fund for Capital Improvements, Replacements and Major Repairs. The Board of Directors shall establish and maintain a reasonable fund for capital improvements, replacement and major repairs by providing for a reserve fund in the Annual Budget, segregating such reserve fund on the books of the Condominium, and allocating and paying monthly to such reserve fund one-twelfth of the total amount budgeted for such reserve fund for the current fiscal year. The portion of the Unit Owners' assessments paid into such reserve fund shall be conclusively deemed to be contributions to the capital of the Condominium by the Unit Owners. Such reserve fund may be expended for the purposes of capital improvements, replacements and major repairs. If for any reason, including nonpayment of any Unit Owner's assessment, such reserve fund is inadequate to defray the cost of a required capital improvement, replacement or major repair, the Board of Directors may at any time levy an additional assessment against the Unit Owners in proportion to the

-13-

Mansfield0087

BOOK 1994 PAGE 866

respective Par Value of their Units, payable into such reserve fund in a lump sum or in installments as the Board of Directors may determine. The Board of Directors shall give notice of any such further assessment on the Unit Owners by a statement in writing giving the amount and reasons therefor, and such additional assessments shall become due and payable, unless otherwise specified in the notice, with the next monthly assessment payment which is due more than 10 days after the delivery or mailing of such notice of additional assessment. All Unit Owners shall be obligated to pay the adjusted monthly amount or, if the additional assessment is not payable in installments, the amount of such assessment.

The proportionate interest of any Unit Owner in any reserve fund shall be considered an appurtenance of his Unit and shall not be separately withdrawn, assigned or transferred or otherwise separated from the Unit to which it is appurtenant, and shall be deemed to be transferred with such Unit.

E.   Special Assessments.  In addition to the assessments authorized above, the Board of Directors may levy a special assessment for the purpose of defraying the cost of any unexpected repair or other nonrecurring contingency, or to meet any deficiencies occurring from time to time. The fund resulting from such special assessment shall be segregated on the books of the Condominium and expended solely for the purposes for which it was assessed. Any such special assessments shall be assessed in the manner set forth in Paragraph D of this Section 6.1 with respect to additional assessments payable to the reserve fund for capital improvements, replacements and major repairs. Notwithstanding the foregoing, the Board of Directors may not levy a special assessment for any purpose other than to defray the cost of unexpected repairs, without first receiving the approval of eighty percent (80%) of the Unit Owners.

F.   Initial Budget.  When the first Board of Directors takes office, it shall determine the Annual Budget, as defined in this Section, for the period commencing upon the sale of the first Unit by the Declarant and ending on the last day of the fiscal year. Assessments shall be levied against the Unit Owners during such period in accordance with Paragraph C of this Section.

G.   Effect of Failure to Prepare or Adopt Annual Budget.  The failure or delay of the Board of Directors to adopt the Annual Budget for the fiscal year shall not constitute a waiver or release in any manner of a Unit Owner's obligation to pay his allocable share of the Common Expenses as herein provided, whenever the same shall be determined, and in the absence of an Annual Budget or adjusted Annual Budget, each Unit Owner shall continue to pay a monthly assessment at the rate established for the preceding fiscal year until a new assessment is adopted under such new Annual Budget or adjusted Annual Budget and notice thereof has been sent to the Unit Owner.

H.   Accounts.  All amounts collected by the Board of Directors with respect to assessments against the Unit Owners may be commingled in a single fund.

-14-

Mansfield0088

### 6.2  Payment of Common Expenses                    BOOK 1994 PAGE 867

All Unit Owners shall be obligated to pay the assessment
for the Common Expenses adopted by the Board of Directors
pursuant to Section 6.1.  No Unit Owner may exempt himself from
liability for his contribution toward Common Expenses by waiver
of the use or enjoyment of any of the Common Elements or by
abandonment of his Unit.  No Unit Owner shall be liable for the
payment of any part of the Common Expenses assessed against his
Unit subsequent to a sale, transfer or other conveyance by him
of such Unit.  The purchaser of a Unit shall be jointly and
severally liable with the selling Unit Owner for all unpaid
assessments against the latter for his proportionate share of
the Common Expenses up to the time of the conveyance without
prejudice to the purchaser's right to recover from the selling
Unit Owner the amounts paid by the purchaser therefor;
provided, however, that any such purchaser shall be entitled to
a statement from the Board of Directors or the Managing Agent,
setting forth the amount of the unpaid assessments against the
selling Unit Owner and such purchaser shall not be liable for,
nor shall the Unit conveyed be subject to a lien for, any
unpaid assessments in excess of the amount therein set forth;
and provided, further, that if the First Mortgagee of record or
other purchaser of a Unit obtains title to the Unit as a result
of foreclosure or deed (or assignment) in lieu of foreclosure
of a first mortgage, such purchaser, its successors and assigns
shall not be liable for, and such Unit shall not be subject to,
a lien for the payment of Common Expenses assessed prior to the
acquisition of title to such Unit.  Such unpaid share of Common
Expenses assessed prior to the acquisition of title to such
Unit by such purchaser pursuant to the foreclosure sale,
conveyance or assignment shall be collectible from all Unit
Owners, including the purchaser, in proportion to the
Fractional Interests allocated to their respective Units.  No
amendment to this Section shall affect the rights of any First
Mortgagee recorded prior to recordation of such amendment
unless the First Mortgagee joins in the execution of such
amendment.

### 6.3  Collection of Assessments

The Board of Directors shall take prompt action to collect
any assessments for common expenses due from any Unit Owner
which remain unpaid for more than 30 days after the due date
for the payment thereof.

### 6.4  Statement of Unpaid Assessments

A.   Upon written request to the Board of Directors
by a Unit Owner or purchaser of a Unit, the Board of Directors,
or a duly designated agent thereof, or the Managing Agent,
shall furnish (within the time period prescribed by the Act) a
recordable statement setting forth the amount of unpaid
assessments levied against such Unit.

B.   The Board of Directors may impose a reasonable
fee not to exceed $10 for each such statement requested and
payment thereof shall be a prerequisite to the issuance of a
statement.

-15-

Mansfield0089

BOOK 1994 PAGE 868

6.5  Maintenance and Repair

A.    By the Association.  The Association, acting through the Board of Directors, shall be responsible for the maintenance, repair and replacement of the following, the cost of which (except for ordinary maintenance of parking spaces) shall be charged to all Unit Owners as a Common Expense:

(1)  The Common Elements, whether located inside or outside of the Units.

(2)  All portions of the Units which contribute to the support of the Building, excluding, however, the surfaces of all walls, floors and ceilings of a Unit.

(3)  Incidental damage caused to a Unit by work done by the Association.

This section 6.5A shall not relieve a Unit Owner of liability for damage to the Common Elements caused by the Unit Owner's negligence or intentional torts.

B.    By the Unit Owner.  Except for the portions of his Unit required to be maintained, repaired or replaced by the Association, each Unit Owner's responsibility shall include but not be limited to the maintenance, repair and replacement, at his own expense, of the following:  any interior walls; interior surface of ceilings, walls and floor; door locks and hardware; entrance doors; windows; lighting fixtures, kitchen and bathroom fixtures, air conditioners, appliances and equipment; and water and sewage pipes, located within the boundaries of the Unit and serving only that Unit.  Each Unit Owner shall keep the interior of his Unit and its equipment and appurtenances in good order, condition and repair and in a clean and sanitary condition, and shall do all redecorating, painting and varnishing which may at any time be necessary to maintain the good appearance and condition of the Unit.  In addition, each Unit Owner shall be responsible for all damage to any and all other Units or to the Common Elements resulting from his failure to make any of the repairs required to be made by him by this Section.  Each Unit Owner shall perform his responsibility in such manner as shall not unreasonably disturb or interfere with the other Unit Owners.  Each Unit Owner shall promptly report to the Board of Directors, or the Managing Agent any defects or need for repairs for which the Board of Directors is responsible.

C.    Manner of Repair and Replacement.  All repairs and replacements shall be of first class quality and as nearly as practicable similar to the character of the construction or installation that existed immediately prior to the occasion that necessitated the repairs or replacements.  Repairs and replacements may be done with contemporary building materials and equipment, and must in every instance comply with all requirements of law.

D.    Maintenance of Parking Spaces.  The ordinary and routine maintenance of parking spaces shall be the responsibility of the Association and shall be charged only against the Unit Owners entitled to use the parking spaces.

-16-

Mansfield0090

BOOK 1994 PAGE 869

E.   **Public Areas.**   Anything contained in these Bylaws to the contrary notwithstanding, the public areas of the Condominium and those areas exposed to public view (including portions of Units) shall be kept in good appearance by either the Association or the Unit Owners who are required to maintain the same, as the case may be, and shall be maintained in a first-class condition, in conformity with the dignity and character of the condominium, and in a manner which does not adversely alter the value of the Condominium.

6.6   Additions, Alterations or Improvements by the Association

Whenever in the judgment of the Board of Directors any Common Elements shall require additions, alterations or improvements costing in excess of $5,000 during a period of 12 consecutive months, and the making of such additions, alterations or improvements shall have been approved by a majority of the Unit Owners in the Association, the Board of Directors shall proceed with such additions, alterations or improvements and shall assess all Unit Owners for the cost thereof as a Common Expense. Any additions, alterations or improvements costing less than $5,000 during any period of 12 consecutive months may be made by the Board of Directors without approval of the Unit Owners and the cost thereof shall constitute part of the Common Expenses. Notwithstanding the foregoing, if, in the opinion of not less than 80% of the members of the Board of Directors, such additions, alterations or improvements are exclusively or substantially exclusively for the benefit of the Unit Owner or Unit Owners requesting the same, such requesting Unit Owner or Unit Owners shall be assessed therefor, in such proportion as they jointly approve, if more than one Unit Owner, or, if they are unable to agree thereon, in such proportions as may be determined by the Board of Directors.

6.7   Structural Additions, Alterations or Improvements by Unit Owners

A Unit Owner may not, without the prior written consent of the Board of Directors, make any structural addition, alteration or improvement in or to his Unit, paint or alter the exterior of the Building, including the doors and windows or the exterior of the Unit's entrance doors, or install air conditioning units or fans in windows. The Board of Directors shall be obligated to answer any written request by a Unit Owner for approval of a proposed structural addition, alteration or improvement (by painting or otherwise) in such Unit Owner's Unit within 45 days after such request, and its failure to do so within the stipulated time shall constitute a consent of the Board of Directors to the proposed addition, alteration or improvement. The Board of Directors may condition its consent upon such terms and conditions as it deems to be desirable or necessary to protect the Condominium and its use and enjoyment. Any application to any governmental authority for a permit to make an addition, alteration or improvement in or to any Unit shall be executed by the Board of Directors only, without, however, incurring any liability on the part of the Board of Directors or any of them to any contractor, subcontractor or materialman on account of such addition, alteration or improvement, or to any person having

-17-

Mansfield0091

BOOK 1994 PAGE 870

any claim or injury to a person or damage to property arising therefrom. The provisions of this Section 6.7 shall not apply to Units owned by the Declarant or its designee until a deed for such Unit has been delivered to a purchaser thereof.

### 6.8 Restrictions on Use of Units and Condominium

A.   The Board of Directors is authorized to promulgate, amend and enforce Rules and Regulations concerning the operation and use of the Condominium; provided, that such Rules and Regulations are not contrary to or inconsistent with the Act, the Declaration or these Bylaws. A copy of the Rules and Regulations shall be furnished by the Board of Directors to each Unit Owner prior to the time the same become effective.

B.   The use of the Condominium is subject to the following restrictions:

(1)   No Unit Owner or other resident of the Condominium shall post any advertisements or posters of any kind in or on the Condominium except as authorized by the Board. This restriction shall not apply to advertisements, signs or posters utilized by the Declarant, or its agents, in selling the Units.

(2)   All Units shall be used only for private residential purposes, except for such temporary uses as may be permitted from time to time by the Board of Directors and for uses reserved to the Declarant pursuant to the Declaration. This provision shall not be construed to prevent the Declarant from using any Unit for model sales office or display purposes nor to prohibit the leasing of Units owned by the Declarant, subject to the provisions of the Condominium Instruments. The Declarant, in adopting the Condominium Instruments, specifically reserves an easement and express right and power to so utilize these Units. No activity shall be conducted or maintained in any Unit or upon any of the Common Elements which is not in conformity with applicable zoning regulations.

(3)   No clothing, laundry, rugs or wash shall be hung from or spread upon or from any window or exterior portion of a Unit or in or upon any Common Element. All refuse and trash shall be deposited in bins or chutes designated for such purposes and in manner prescribed by Board of Directors or Managing Agent.

(4)   The maintenance, keeping, breeding, boarding and/or raising of animals, of any kind, regardless of number shall be and hereby is prohibited within any Condominium Unit or upon any Common Elements, except that this shall not prohibit the keeping of orderly domestic pets such as dogs, cats and/or caged birds, provided that they are not kept or maintained for commercial purposes or for breeding. Pets shall not be permitted upon the Common Elements unless accompanied by an adult and unless they are carried or leashed. Any Unit Owner who keeps or maintains any pet within his/her Unit shall be deemed to have indemnified and agreed to hold the Association, each of its members and the Declarant and Managing Agent free and harmless from any loss, claim or liability of any kind or character whatever arising by reason of keeping or maintaining such pet within the Condominium. All pets shall be innoculated as required by law. The Board of Directors shall

-18-

Mansfield0092

BOOK 1994 PAGE 871

have the right to order any person whose pet is a nuisance, to remove such pet from the premises and the Board of Directors, after affording the right to a hearing to the Unit Owner affected, shall have the right to declare any pet a nuisance, and to limit the number of pets per Unit.

(5)  Unit Owners, residents and lessees shall exercise extreme care to avoid unnecessary noise or the use of musical instruments, radios, televisions and amplifers that may disturb other Unit Owners.  All walking areas (except in kitchens and bathrooms) and 70% of all wood floor areas in each Unit must be covered by carpets or rugs.

(6)  No nuisances shall be allowed in the Condominium nor shall any use or practice be allowed which is a source of annoyance to its residents or which interferes with the peaceful possession or proper use of the Condominium by its residents.

(7)  No Unit Owner, resident or lessee shall install wiring for electrial or telephone installation, television antennae or other equipment, which protrudes through the walls or the roof of the Building except as authorized by the Board of Directors.

(8)  No Unit or Common Elements of the Condominium may be used for any unlawful purpose.

(9)  A Unit Owner shall not place or cause to be placed in the public hallways, walkways, alleyways or other General Common Elements any bicycles, furniture, packages or objects of any kind.  The public hallways, walkways and alleyways shall be used for no purpose other than for normal transit through them.

(10)  No Unit Owner, resident or lessee shall direct or engage any employee of the Condominium on any private business of such Unit Owner, resident or lessee while such employee is on duty, nor shall he direct, supervise or in any manner attempt to assert control over any such employee or over any contractor acting under a contract or agreement with the Association.

(11)  No activity shall be done or maintained in any Unit or upon any Common Elements which will increase the rate of insurance on any Unit or the Common Elements or result in the cancellation of insurance thereon, unless such activity is first approved in writing by the Board of Directors.

(12)  In the use of the Units and the Common Elements of the Condominium, Unit Owners shall obey and abide by all valid laws, ordinances and zoning and other governmental regulations affecting the same and all applicable Rules and Regulations adopted by the Board of Directors.

(13)  The Common Elements shall be used only for the furnishing of the services and facilities for which they are reasonably suited and which are incident to the use and occupancy of the Units.

-19-

Mansfield0093

(14)   A Unit Owner may lease his Unit for a term of not less than six months provided that (i) any lease agreement shall be in writing in a form approved by the Board of Directors, shall provide that its terms are subject in all respects to the Condominium Instruments and that the failure by the lessee to comply with the Condominium Instruments shall be a default under the lease; (ii) a fully conformed copy of said lease or renewal thereof shall be delivered to the Board of Directors within 7 days after execution; and (iii) the Board of Directors has the power to terminate such lease or to bring summary proceedings to evict the tenant in the name of the lessor thereunder, in the event of a default by the tenant in the performance of such lease.  No Unit may be leased for transient or hotel purposes, and no Unit Owner may lease less than the entire Unit.  The restrictions of this paragraph shall not apply to the Declarant or any First Mortgagee who comes into possession of a Unit pursuant to a foreclosure sale, judicial sale or transfer or conveyance in lieu of foreclosure.

(15)   Except as otherwise specifically permitted by the Rules or Regulations, only passenger vehicles shall be parked in the Parking Spaces designated therefor.  No inoperable, unlicensed or abandoned motor vehicle of any type shall be parked or stored upon the Property, and no portion of the Property shall be used for the repair, overhaul, painting or work of a similar nature of any motor vehicle.  Any such vehicle may be towed from the Condominium at the offending Unit Owner's risk and expense.

### 6.9   Right of Access

Each Unit Owner grants a right of access to his Unit to the Board of Directors, the Managing Agent and to any other person authorized by the Board of Directors for the purpose of making inspections and for the purpose of correcting any condition in his Unit which affects another Unit or a Common Element, or for the purpose of performing installations, alterations, or repairs to the mechanical or electrical services or other Common Elements in his Unit or elsewhere in the Building, or to correct any condition which violates the provisions of any mortgage covering another Unit, provided that requests for entry are made in advance and that any such entry is at a time reasonably convenient to the Unit Owner.  In case of an emergency, such right of entry shall be immediate whether the Unit Owner is present at the time or not.  For the purpose of emergencies, each Unit Owner shall be required to provide the Board of Directors with a key to his or her Unit.

### 6.10   Limitation of Liability

The Association shall not be liable for any failure of water supply or other services to be obtained by the Association or paid for out of the common expense funds, or for injury or damage to person or property caused by the elements or resulting from electricity, water, snow or ice which may leak or flow from any portion of the Common Elements or from any wire, pipe, drain, conduit, appliance or equipment.  The Association shall not be liable to the owner of any Condominium Unit for loss or damage, by  theft or otherwise, of articles which may be stored upon any of the Common elements.  No diminution or abatement of Common Expense assessments, as hereinelsewhere provided, shall be claimed or allowed for

-20-

Mansfield0094

inconvenience or discomfort arising from the making of repairs or improvements to the Common Elements, or to any Condominium Unit, or from any action taken by the Association to comply with any law or ordinance or with the order or directive of any municipal or other governmental authority or for the dispossession of the Unit Owner by reason of fire or other casualty, except to the extent covered by insurance.

## ARTICLE VII

### INSURANCE, DESTRUCTION, RESTORATION, CONDEMNATION AND DISTRIBUTION

#### 7.1 Authority

The Board of Directors shall obtain and maintain casualty and liability insurance under such terms and for such amounts as shall be deemed necessary by the Board of Directors, but in no event less than the amount required by Section 7.2 hereof. The insurance premiums paid by the Board shall be charged as items of Common Expense. Such insurance coverage shall provide for the issuance of certificates of insurance and mortgagee endorsements to all First Mortgagees of the Units, if requested. Such insurance coverage shall be written on the Condominium and shall provide for the insurance proceeds covering any loss to be payable to the Board of Directors as Insurance Trustee for the benefit of each Unit Owner and his mortgagee according to his Percentage Interest.

#### 7.2 Coverage

The Condominium shall be insured, to the extent available, against casualty in a minimum amount equal to the maximum insurable replacement value (i.e., 100% of replacement costs based upon the value of replacing the Building and all improvements of the Condominium utilizing contemporary building materials and technology) thereof (exclusive of excavations and foundations) as determined annually by the Board of Directors with assistance of the insurance company affording such coverage. The policy shall cover all the improvements of the Condominium except those made by a Unit Owner at his expense and shall contain a "condominium replacement cost" endorsement. Such coverage shall afford protection against:

A.  loss or damage by fire, vandalism, malicious mischief, windstorm, and other hazards covered by the standard extended coverage endorsement; and

B.  such other risks as shall customarily be covered with respect to projects similar in construction, location and use as the Directors in their sound discretion may deem advisable.

Such coverage shall insure the Building (including all of the Units and the bathroom, laundry and kitchen equipment, fixtures and cabinets, and electrical fixtures, together with all airconditioning, heating and other equipment, but not including furniture, furnishings or other personal property supplied or installed by Unit Owners), and other Condominium property including all personal property included in the Common Elements. If there is a steam boiler in operation, the Condominium shall have boiler explosion insurance in the amount

-21-

Mansfield0095

of $50,000 per accident per location. The Condominium also shall be insured against liability for personal injury and property damage in such amounts and in such forms as shall be required by the Board, which, however, in no event shall be less than $1,000,000 with respect to any one occurrence and $50,000 with respect to any claim for property. All liability insurance shall contain cross-liability endorsements to cover liabilities of the Association as a group, the Board and each individual Unit Owner. The deductible, if any, on any policy of insurance purchased by the Board of Directors, shall be paid by the Association. Workmen's Compensation insurance shall be obtained where necessary to meet the requirements of law. In addition to the foregoing, the Board of Directors may obtain such additional insurance coverage as it may deem advisable and appropriate or as may be requested from time to time by a majority of the Unit Owners.

### 7.3   Limitations

Insurance obtained pursuant to the requirements of this Article VII shall be subject to the following provisions:

A.   Each policy shall be written with a company or companies which are licensed to do business in the Commonwealth of Virginia and which falls into a category of Class VI or better in the current edition of Best's Key Rating Guide.

B.   No insurance coverage obtained and maintained pursuant to the requirements of this Article VII shall be brought into contribution with insurance purchased individually by any of the Unit Owners or their mortgagees, as herein permitted, and any "no other insurance" or similar clause in any policy obtained by the Board of Directors pursuant to the requirements of this Article shall exclude such policies from consideration.

C.   Each policy shall provide that it may not be cancelled or substantially modified or reduced without at least 30 days' prior written notice to all insureds named thereon, including all named First Mortgagees.

D.   Each policy of casualty insurance shall provide that, notwithstanding any provisions thereof which gives the carrier the right to elect to restore, or repair damage or reconstruct in lieu of making a cash settlement, such option shall not be exercisable without the prior written approval of the Board of Directors.

E.   Each policy shall contain a waiver of subrogation by the insurer as to any and all claims against the Unit Owners, the Association, the Board of Directors, the Managing Agent, and their respective agents, and of any defenses based upon coinsurance or invalidity arising from the acts of the insured.

F.   Each policy shall contain provisions (i) that its coverage shall not be prejudiced by any act or neglect of any occupants or Unit Owners of the Condominium or their agents when such act or neglect is not within the control of the insured, or the Unit Owners collectively; and (ii) that it shall not be prejudiced by failure of the insured, or the Unit Owners collectively, to comply with any warranty or condition

-22-

Mansfield0096

BOOK 1994 PAGE 875

with regard to any portion of the Condominium over which the insured, or the Unit Owners collectively, have no control.

### 7.4  Notice of Insurance Coverage

The Board of Directors shall promptly furnish to each Unit Owner written notice of the procurement, subsequent changes, or termination of each insurance policy obtained on behalf of the Association.

### 7.5  Individual Policies

Each Unit Owner or any mortgagee may obtain at his own expense additional insurance, including a "condominium unit owner's endorsement" for improvements and betterments to a Unit made or acquired at the expense of the Unit Owner.  Such insurance shall contain the same waiver of subrogation provision as that required by Section 7.3E hereof.  It is recommended that each Unit Owner obtain, in addition to the insurance hereinabove provided to be obtained by the Association, a "Condominium Unit Owner's Policy," or equivalent, to insure against loss or damage to personal property used or incidental to the occupancy of the Unit, additional living expense, vandalism or malicious mischief, theft, personal liability and the like.  Such policy should include a condominium unit owner's endorsement covering losses to improvements and betterments to the Unit made or acquired at the expense of the Unit Owner.  No Unit Owner shall maintain insurance coverage which will tend to decrease the amount which the Association may realize under any insurance policy which it may have in force at any particular time; the Board of Directors may require that each Unit Owner shall file with the Managing Agent a copy of each individual policy of insurance purchased by the Unit Owner within 30 days after its purchase; the Board of Directors may also require that each Unit Owner shall notify the Board of Directors of all improvements made by him to his Unit having a value in excess of $1,000.

### 7.6  Insurance Trustee

The Board of Directors shall serve as the Insurance Trustee.  All insurance policies purchased by the Association shall be for the benefit of the Association, each Unit Owner and his First Mortgagee, as their respective interests may appear, and shall provide that proceeds payable pursuant to the policies shall be paid directly to the Board of Directors as Insurance Trustee.  All policies shall provide that adjustment of loss shall be made by the Board of Directors.

### 7.7  Covenants for Benefit of Mortgagees

Proceeds of insurance policies received by the Insurance Trustee shall be distributed to or for the benefit of the Unit Owner entitled thereto, after first paying or making provision for the payment of the expenses of the Insurance Trustee, in the following manner:

A.   Proceeds are to be paid first to repair or restore damage or destruction, as elsewhere provided herein. After defraying the cost of the repair or restoration, all remaining proceeds shall be payable jointly to the Unit Owners

-23-

BOOK 1994 PAGE 876

and First Mortgagees, if any, entitled thereto.  This covenant is for the benefit of any First Mortgagee and may be enforced by such mortgagee.

B.   If it is determined in the manner elsewhere provided herein that the damage for which the proceeds are paid shall not be reconstructed or repaired, then and in that event, the Condominium shall be deemed to be owned in common by the Unit Owners and shall be subject to an action for partition upon the suit of any Unit Owner or mortgagee in which event the net proceeds of sale together with the net proceeds of any insurance shall be distributed pro rata to the Unit Owners, after first paying off, out of the share of each Unit Owner, to the extent sufficient for that purpose, all liens, including mortgage liens, on the Unit of such Unit Owner.  This is a covenant for the benefit of any mortgagee and may be enforced by such mortgagee.

### 7.8   Reconstruction

If any part of the Condominium shall be damaged by casualty, the determination of whether or not to reconstruct or repair the same shall be made as follows, subject to the provisions of the Condominium Declaration:

A.   Where there is a partial destruction, which shall be deemed to mean destruction which does not render two-thirds or more of the Units untenantable, there shall be compulsory reconstruction or repair.

B.   Where there is total destruction, which shall be deemed to mean destruction which does render more than two-thirds of the Units untenantable, reconstruction or repair shall not be compulsory unless at a meeting which shall be called within 90 days after the occurrence of the casualty, or, if by such date the insurance loss has not been finally adjusted, then within 120 days after the occurrence of the casualty, all of the Unit Owners unanimously vote in favor of such reconstruction or repair.

C.   If any Building or improvement standing or erected upon the Condominium shall be destroyed or damaged by some casualty and such destroyed or damaged property is to be reconstructed or repaired, the reconstruction or repair thereof shall, at least, be to the extent of the replacement value of the property destroyed or damaged, and as nearly as practicable to the character of the Building or improvement existing immediately prior to such casualty.  Any reconstruction or repair shall be done in accordance with the outstanding building code requirements of the Commonwealth of Virginia and Arlington County and may be done with contemporary building materials, and achieved by utilizing updated construction systems and technology.

If the damage is only to those parts of one Unit for which the responsibility of maintenance and repair is borne by the Unit Owner, then the Unit Owner shall be responsible for reconstruction and repair after casualty and shall be entitled to apply, with the assistance of the Board of Directors, for the applicable insurance proceeds.  In all other instances the responsibility of reconstruction and repair after casualty shall be that of the Board of Directors.

-24-

Mansfield0098

D.   The proceeds of insurance collected on account of casualty and funds received by the Board of Directors from collections of assessments against Unit Owners on account of such casualty shall constitute a construction fund which shall be disbursed in payment of the costs of reconstruction and repair in the following manner:

(1)   If the amount of the estimated cost of reconstruction and repair is $10,000 or less, (as estimated by the Board of Directors) then the construction fund shall be disbursed in payment of such costs upon order of the Board of Directors, provided, however, that upon request of a mortgagee which is a beneficiary of an insurance policy, the proceeds of which are included in the construction fund, such fund shall be disbursed in the manner hereinafter provided;

(2)   If the estimated cost of reconstruction and repair of the building or other improvement is more than $10,000, then the construction fund shall be disbursed in payment of such costs upon approval of an architect qualified to practice in the Commonwealth of Virginia and employed by the Board of Directors to supervise such work, payment to be made from time to time as the work progresses.  The architect shall be required to furnish a certificate giving a brief description of the services rendered and materials furnished by various contractors, subcontractors, materialmen, the architect, or other persons who have rendered services or furnished materials in connection with the work, and stating that

(a)   the sums requested by them in payment are justly due and owing and that said sums do not exceed the value of the services and materials furnished;

(b)   there is no other outstanding indebtedness known to the said architect for the services and materials described; and

(c)   the cost as estimated by said architect for the work remaining to be done subsequent to the date of such certificate, does not exceed the amount of the construction fund remaining after payment of the sum so requested.

### 7.9   Condemnation

A taking of, injury to, or destruction of part or all of the Condominium by the exercise of the power of eminent domain shall be considered to be included in the term damage or destruction as provided in Section 7.7A and 7.7B hereof and the award or settlement or any other compensation arising out of any taking or condemnation shall be treated in the same manner as insurance proceeds arising from a casualty loss.

### 7.10   Assessments if Insurance is Inadequate

Immediately after a casualty causing damage to property for which the Board of Directors has the responsibility of maintenance and repair, the Board shall obtain reliable and detailed estimates of the cost to replace the damaged property in as good a condition as it was before the casualty.  Such costs may include professional fees and premiums for such bonds

-25-

Mansfield0099

BOOK 1994 PAGE 878

as the Board desires.  If the proceeds of insurance are not
sufficient to defray such estimated costs; a special assessment
shall be made against all the Units in proportion to the Par
Value of the Units, in sufficient amounts to provide funds to
pay the estimated costs.  If at any time during reconstruction
and repair, or upon completion of reconstruction or repair, the
funds for payment of the costs thereof are insufficient,
assessments shall be made against all of the Units in
proportion to their Par Value in sufficient amounts to provide
funds for the payment of such costs.

### 7.11 Disbursements

Any and all disbursements of funds, whether such funds
consist of insurance proceeds, special assessments, sales
proceeds, or any combination thereof, to be made by the
Insurance Trustee for any purpose whatsoever, shall be made
pursuant to and in accordance with a certified statement of the
Association or the Board of Directors.

### 7.12 Notification

The Board of Directors shall notify: (a) the First
Mortgagee of the Unit whenever damage to the Unit covered by
the mortgage exceeds $1,000; and (b) all First Mortgagees
whenever damage to the Common Elements exceeds $10,000.  If any
Unit or portion thereof is made the subject of any condemnation
or eminent domain proceeding or is otherwise sought to be
acquired by a condemning authority, then the Board of Directors
shall give timely written notice of any such proceeding or
proposed acquisition to the First Mortgagees of such Unit or
element.

### 7.13 Premiums and Deductibles

Premiums and deductibles upon all insurance policies
purchased by the Board of Directors shall be deemed to be a
Common Expense.

### ARTICLE VIII

### MORTGAGES

### 8.1 Notice to Board

A Unit Owner who mortgages his Unit shall notify the Board
through the Managing Agent of the name and address of his
mortgagee; the Board shall maintain such information in a book
entitled "Mortgagees of Units."

### 8.2 Notice of Unpaid Assessments

The Board, whenever so requested in writing by a
mortgagee, shall promptly report any then unpaid assessments
due from, or any other default by, the owner of the mortgaged
Unit.

### 8.3 Notice of Default

The Board shall give written notice to a Unit Owner of any
default by the Unit Owner in the performance of any obligations
under the Act or Condominium Instruments, and, if such default

-26-

BOOK 1994 PAGE 879

is not cured within 60 days, shall promptly send a copy of such notice to each holder of a mortgage covering such Unit whose name and address has heretofore been furnished to the Board.

### 8.4   Examination of Books

Each Unit Owner and each First Mortgagee shall be permitted to examine the books of account of the Condominium at reasonable times, on business days, but not more often than once a month.  Each First Mortgagee, upon request to the Board of Directors, will be entitled to receive an annual audited financial statement of the Condominium within ninety days following the end of any fiscal year of the Condominium.

### 8.5   Notice of Meetings

Upon request, each First Mortgagee of a Unit shall receive notice, in writing, of all meetings of the Association, and shall be permitted to designate a representative to attend all such meetings.

## ARTICLE IX

## NOTICE

### 9.1   Manner of Notice

Unless specified otherwise in other sections of these Bylaws, whenever any notice is required to be given under the provisions of the Act or of the Condominium Instruments to any mortgagee, director or Unit Owner, it shall not be construed to require personal notice, but such notice may be given in writing, by mail, hand delivery, by depositing the same in a post office or letter box, in a post-paid sealed wrapper, addressed to such mortgagee, director or Unit Owner at such address as appears on the books of the Condominium, and such notice shall be deemed to be given at the time when the same shall be thus mailed.

### 9.2   Waiver of Notice

Whenever any notice is required to be given under the provisions of the Act or the Condominium Instruments, a Waiver thereof, in writing, signed by the person or persons entitled to such notice, whether signed before or after the time stated therein, shall be deemed equivalent thereto.

## ARTICLE X

## AMENDMENT OF BYLAWS

### 10.1 Amendment of Bylaws

At a meeting of the Association called for that purpose, these Bylaws may be amended by the affirmative vote of Unit Owners representing at least two-thirds of the votes in the Association; provided, however, that (a) section 4.3 insofar as it relates to the selection of members of the Board of Directors by the Declarant, (b) section 3.7 insofar as it provides that the Declarant, so long as it is the owner of one or more Units, may vote the votes appurtenant thereto, and (c) section 10.2 may not be amended without the consent in writing

-27-

Mansfield0101

BOOK 1994 PAGE 880

of the Declarant, so long as the Declarant shall be a Unit Owner. Furthermore, notwithstanding the foregoing, so long as the Declarant is the owner of one or more Units, no amendment to the Bylaws or Rules and Regulations may be adopted which could interfere with the display, sale, lease, or other disposition of such Unit or Units. Amendments may be proposed by the Board of Directors or by petition signed by Unit Owners representing at least 30% of the votes in the Association. No amendment to the Bylaws shall become effective until recorded. The Declarant reserves the right to amend these Bylaws so long as there is no Unit Owner other than the Declarant.

### 10.2 Approval of Mortgagees

These Bylaws contain provisions concerning various rights, priorities, remedies and interests of the First Mortgagees of Units. Such provisions in these Bylaws are to be construed as covenants for the protection of the First Mortgagees on which they may rely in making loans secured by mortgages of the Units. Accordingly, all First Mortgagees registered with the Board of Directors shall be given 30 days' notice of all proposed amendments, and no amendment or modification of these Bylaws impairing or affecting the rights, priorities, remedies or interests of a First Mortgage shall be adopted without the prior written consent of such mortgagee. If there is more than one First Mortgagee holding mortgages on the Units, it shall be sufficient for this purpose to obtain the written consent of the First Mortgagee or Mortgagees holding mortgages on at least 75% of the Units encumbered by mortgages.

### ARTICLE XI

### COMPLIANCE AND DEFAULT

### 11.1 Relief

Each Unit Owner shall be governed by, and shall comply with, all of the terms of the Condominium Instruments and the Rules and Regulations, and any amendments of the same. A default by a Unit Owner shall entitle the Association acting through the Board of Directors or Managing Agent, to the following relief:

A.   Legal Proceedings.   Failure to comply with any of the terms of the Condominium Instruments and the Rules and Regulations shall be grounds for relief which may include without limiting the same, an action to recover any sums due for money damages, injunctive relief, foreclosure of the lien for payment of all assessments, any other relief provided for in these Bylaws, or any combination thereof, and any other relief afforded by a court of competent jurisdiction, all of which relief may be sought by the Association, the Board of Directors, the Managing Agent, or, if appropriate, by an aggrieved Unit Owner.

In any action brought by the Board of Directors to foreclose a lien against a Unit because of unpaid common charges, the Unit Owner, if he or his tenant is in possession of the Unit, shall be required to pay a reasonable rental for the use of his Unit, and the plaintiff in such foreclosure action shall be entitled to the appointment of a receiver to

-28-

Mansfield0102

BOOK 1994 PAGE 881

collect the same, such rent to accrue from the date that an action to foreclose and/or to recover possession of Unit is commenced.

B.   _Additional Liability_.  Each Unit Owner shall be liable for the expenses of all maintenance, repair or replacement rendered necessary by his act, neglect or carelessness, or the act, neglect or carelessness of any member of his/her family or his/her employees, agents, licensees, or invitees, but only to the extent that such expense is not covered by the proceeds of insurance carried by the Board of Directors.  Such liability shall include any increase in fire insurance rates occasioned by use, misuse, occupancy or abandonment of any Unit or its appurtenances.  Nothing contained herein, however, shall be construed as modifying any waiver by an insurance company of its rights of subrogation.

C.   _Costs and Attorney's Fees_.  In any proceeding arising out of any alleged default by a Unit Owner, the prevailing party shall be entitled to recover the costs of the proceeding, and such reasonable attorney's fees as may be determined by the court.

D.   _No Waiver of Rights_.  The failure of the Association, the Board of Directors or any Unit Owner to enforce any right, provision, covenant or condition which may be granted by the Condominium Instruments or the Rules and Regulations shall not constitute a waiver of the right of the Association, the Board of Directors or any Unit Owner to enforce any right, provision, covenant or condition of the Condominium Instruments or the Rules and Regulations in the future.  All rights, remedies and privileges granted to the Association, Board of Directors or any Unit Owner pursuant to any term, provision, covenant or condition of the Condominium Instruments or Rules and Regulations shall be deemed to be cumulative and the exercise of any one or more thereof shall not be deemed to constitute an election of remedies, nor shall it preclude the party exercising the same from exercising such privileges as may be granted to such party by the Condominium Instruments or the Rules and Regulations, or at law or in equity.

E.   _Interest_.  In the event of a default by any Unit Owner which continues for a period in excess of 15 days, such owner shall be obligated to pay interest on the amounts due at the rate of 10% per annum from the due date thereof.

F.   _Abatement and Enjoinment of Violations by Unit Owners_.  The violation of any Rule or Regulation adopted by the Board of Directors, or the breach of any Bylaw contained herein, or the breach of any provision of the Condominium Instruments, (after due notice to the Unit Owner that said violation or breach constitutes danger to the Condominium or Unit Owners) shall give the Board of Directors the right, in addition to any other rights set forth in these Bylaws: (i) to enter the Unit in which, or as to which, such violation or breach exists and summarily to abate and remove, at the expense of the defaulting Unit Owner, any structure, thing or condition that may exist therein contrary to the intent and meaning of the provisions hereof, and the Board of Directors shall not thereby be deemed guilty in any manner of trespass; or (ii) to

-29-

Mansfield0103

BOOK 1994 PAGE 882

enjoin, abate or remedy by appropriate legal proceedings, either at law or in equity, the continuance of any such breach.

## 11.2 Lien for Contributions

A. The total annual contribution of each Unit Owner for the Common Expenses levied pursuant to these Bylaws is hereby declared to be a lien levied against the Unit of such Unit Owner within the purview of the Act, which lien shall be effective as of the first day of each fiscal year of the Condominium. The Board of Directors, or Managing Agent, may file or record such other or further notice of lien, or such other or further document as may be required by the then laws of the Commonwealth of Virginia to confirm the establishment of such lien.

B. In any case where an assessment against a Unit Owner is payable in installments, upon a default by such Unit Owner in the payment of any single installment, which continues for 10 days after written notice of such default has been sent to the Unit Owner, the maturity of the remaining total of the unpaid installments of such assessments may be accelerated, at the option of the Board of Directors, and the then balance owing may be declared due and payable in full together with interest thereon at ten (10) percent per annum and the cost of collection thereof, by the service of notice to such effect upon the defaulting Unit Owner by the Board of Directors or Managing Agent. The Board of Directors may post a list of Unit Owners who are delinquent in the payment of any assessment or other fees which may be due the Association, including any installment thereof which becomes delinquent, in any prominent location within the Condominium. The Unit Owner who is delinquent shall be prohibited from voting at any meeting of the Unit Owners' Association until the amount necessary to satisfy indebtedness and release the lien has been paid.

C. The lien for assessments may be foreclosed in the manner provided by the laws of the Commonwealth of Virginia by suit brought in the name of the Board of Directors, acting on behalf of the Association. During the pendency of such suit the Unit Owner shall be required to pay a reasonable rental for the Unit for any period prior to sale pursuant to any judgment or order of any court having jurisdiction over such sale. The plaintiff in such proceedings shall have the right to the appointment of a receiver, if available under the then laws of the Commonwealth of Virginia.

D. The lien for assessments shall be prior to all other liens and encumbrances except: (i) liens and encumbrances Recorded prior to the recordation of the Declaration; (ii) liens of any First Mortgagee holding a first mortgage on a Unit and recorded prior to the perfection of such lien by the Association in accordance with Section 55-79.84 of the Condominium Act and (iii) liens for real estate taxes and municipal assessments or charges against the Unit.

## 11.3 Information to be Furnished in the Event of Resale by a Unit Owner

A. The Board of Directors or a duly designated agent or the Managing Agent, upon written request of any Unit Owner, shall furnish to such Unit Owner the statements

-30-

Mansfield0104

BOOK 1994 PAGE 883

prescribed by Section 55-79.97 of the Condominium Act, as follows:

> (1)  Statement regarding any unpaid assessments.

> (2)  Statement concerning any rights of first refusal or other restraints on free alienability.

> (3)  Statement of any capital expenditures anticipated by the Association within the current or succeeding two fiscal years.

> (4)  Statement of the status and amount of any reserves for capital expenditures, contingencies, and improvements, and any portion of such reserves earmarked for any specified project by the Board of Directors.

> (5)  A copy of the statement of financial condition of the Association for the then most recent fiscal year for which such statement is available and the current operating budget, if any.

> (6)  Statement of the status of any pending suits or any judgments to which the Association is a party.

> (7)  Statement setting forth that insurance coverage is provided for all Unit Owners by the Association and a statement whether such coverage includes public liability, loss or damage by fire and extended coverage insurance with respect to the Unit and its contents.

> (8)  Statement that any improvements or alterations made to the Unit, or the Limited Common Elements assigned thereto, by the prior Unit Owner are not in violation of the Condominium Instruments.

> B.  The Board of Directors may impose a reasonable fee not to exceed $50 to furnish all the information required in accordance with Paragraph A, and payment thereof shall be a prerequisite to the issuance of any such statement.

> C.  In the event that a Unit Owner contracts to sell his/her Unit, the Unit Owner shall notify the Board of Directors or Managing Agent of the pending sale, the approximate date of settlement, and the approximate date that the Unit Owner intends to move out of the Building.

ARTICLE XII

MISCELLANEOUS

### 12.1 Compliance

These Bylaws are set forth in compliance with the requirements of the Act.

### 12.2 Conflict

These Bylaws are subordinate and subject to the Act, the Declaration and the Condominium Plats and Condominium Plans. In the event of any conflict between these Bylaws and the other

-31-

Mansfield0105

Condominium Instruments, the provisions of the other
Condominium Instruments shall control.

### 12.3 Severability

These Bylaws are adopted to comply with the laws and
regulations of the Commonwealth of Virginia.  If any provision
of these Bylaws or the application thereof in any circumstances
is held invalid, the validity of the remainder of these Bylaws
shall not be affected thereby, and to this end the provisions
of these Bylaws are declared to be severable.

### 12.4 Waiver

No restriction, condition, obligation or provision of
these Bylaws shall be deemed to be abrogated or waived by
reason of any failure to enforce the same.

### 12.5 Captions

The captions contained in these Bylaws are for convenience
only and are not a part of these Bylaws and are not intended in
any way to limit or enlarge the terms and provisions of these
Bylaws.

### 12.6 Gender, etc.

Whenever in these Bylaws the context so requires, the
singular number shall include the plural and the converse; and
the use of any gender shall be deemed to include all genders.

### 12.7 Notice of Loss to or Taking of Common Elements

The Board of Directors shall give written notice to the
Federal National Mortgage Association and the Federal Home Loan
Mortgage Corporation (c/o its Servicer) of any loss to or
taking of the Common Elements of the Condominium, if such loss
or taking exceeds Ten Thousand ($10,000) Dollars, or, with

-32-

Mansfield0106

respect to a Unit covered by a mortgage which has been BOOK 1994 PAGE 886
purchased, in whole or in part, where the loss or taking
exceeds One Thousand ($1,000) Dollars.

IN WITNESS WHEREOF, the Declarant has caused these Bylaws
to be adopted and executed on this _30th_ day of _July_,
1979.

ATTEST:                                    HORIZON CONDOMINIUM CORP.
                                                (Declarant)

_[signature]_                          By: _William O Voss_

~~STATE OF MARYLAND~~
~~COMMONWEALTH OF VIRGINIA~~ )
_COUNTY OF MONTGOMERY_ )             SS:

The foregoing By-Laws were acknowledged before me this
_30th_ day of _JULY_, 1979 by _WILLIAM O. Voss_ as
_Vice Pres_ of Horizon Condominium Corp.

                                       _[signature]_
                                       Notary Public

My commission expires:

_7/1/83_

Mansfield0107

BOOK 1994 PAGE 965

VIRGINIA: IN THE CLERK'S OFFICE OF THE CIRCUIT COURT OF THE COUNTY OF...

...receive and, with the Certificate annexed, admitted to record

on August 13, 1979 at 4:18 o'clock P M

STATE TAX 
COUNTY TAX 
TRANSFER FEE 
CLERK'S FEE     $83.00
GRANTOR'S TAX   $53.00
TOTAL           $83.00

David A. Bell

Tester _____ Clerk

Chicago
Title

Mansfield0108