IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MICHAEL FORD,                )
                             )
        Plaintiff,            )
                             )
v.                            )        Civil Action No.: 1:08-cv-1318
                             )
                             )
ZALCO REALTY, INC., *et al.*, )
                             )
        Defendants.           )

## MEMORANDUM OPINION

Before the Court is Defendant James Mansfield's Motion for Summary Judgment (Dkt. No. 138) and Motion to Strike Plaintiff's Claim for Emotional Distress Damages (Dkt. No. 129). After reviewing the pleadings by the parties, the Court finds that there are no genuine issues of material fact, and Defendant is entitled to judgment as a matter of law. Therefore, Defendant's Motion for Summary Judgment is GRANTED.

Further, as Plaintiff has failed to present any medical evidence that he has in fact suffered from emotional distress, Defendant's Motion to Strike Plaintiff's Claim for Emotional Distress Damages is GRANTED.

I.  Background

Horizon House is a condominium complex in Arlington, Virginia made up of a high-rise building with approximately 288 units. As specified in its Bylaws, all unit owners in Horizon House are members of the Unit Owners' Association (the "Association"). Horizon House Condominium Bylaws ("Bylaws"), Art. III, Sec. 3.1. The governance of the Association is by a

Board of Directors ("the Board") elected by the members of the Association. *Id.*, Art. III, Sec. 3.7. Pursuant to the Bylaws, each director serves a two year term, with staggered elections taking place at an annual meeting of the unit owners. *Id.*, Art. IV, Sec. 4.4. The Bylaws also provide that a director may be removed "with or without cause" following notice and an opportunity to be heard at a meeting. *Id.*, Art. IV, Sec. 4.11.

At the annual meeting in 2001, Vondell Carter was elected to the Board among approximately five candidates vying for three open positions. (Carter Dep. pp. 16-17). Mr. Carter was the only African-American among the candidates. He received the highest number of votes among all of the candidates. *Id.* at 17. Mr. Carter was reelected to the Board at the annual meetings in August 2003 and August 2005. *Id.* at 34-35. Following the election at the annual meeting of August 2005, the five members of the Board were Vondell Carter; Susan Morris (who is Mr. Carter's wife and was elected to the board in August 2004); Greg Weatherman; David Faison; and Adrianna Garretson. Minutes from Board Meeting from Sept. 29, 2005. Mr. Carter was the president of the Board. *Id.*

The Defendant James Mansfield is an attorney who began serving as counsel for the Association in 1990. As counsel for the Association, Mr. Mansfield came to some of the monthly board meetings. Carter Dep., pp. 43-44.

Beginning in 2003 or 2004, Horizon House contracted the services of a management company named Zalco Realty. In the fall of 2005, Horizon House asked Zalco to assist it in the search for a new building manager. The role of building manager is to provide certain management functions at Horizon House. He/she has an office on the main level of the condominium and has key access to each residential unit. Michael Ford Dep., pp. 135-137. In 2005 Jennifer O'Keefe was serving as the interim building manager for Horizon House. Minutes

from Sept. 29, 2005 Board Meeting. Ms. O'Keefe is Caucasian. In its search for a new building manager Zalco provided applications for the individuals applying for the position to fill out. One of the applicants for the position was Plaintiff Michael Ford. Mr. Ford is African-American. The application included a section for applicants to disclose any criminal history. In this section Plaintiff wrote that had been convicted of misdemeanor assault in Ohio in 1995. The applicants also had to be interviewed as part of the application process. On or about November 4, 2005, Plaintiff and at least two other applicants were interviewed by three Board members (Vondell Carter, Susan Morris, and Greg Weatherman) and Mr. Constant, the portfolio/property manager for Horizon House. Of the applicants interviewed on that date at least two were African American, including Plaintiff. Constant Dep., p. 149. To the best of anyone's knowledge, Plaintiff was the only person interviewed who had a criminal record. *Id.* at 149-150.

The conviction Plaintiff revealed in his application was originally a charge for felony assault. Plaintiff ended up pleading guilty to misdemeanor assault and was sentenced to sixty days in jail. Summit County Court Journal Entry. Plaintiff claims that the victim was his uncle and that the incident occurred during a family dispute. Ford Dep., p. 290. The victim was taken to the hospital. When Zalco ran a routine background check on Plaintiff, it also discovered two pending charges from August 3, 2005. Plaintiff was charged with one count of assault in the second degree and one count of a sexual offense in the fourth degree upon a tenant in the apartment building in which he previously served as the building manager. District Court of Maryland for Prince George's County Statement of Charges. The charges were still pending at the time Plaintiff began working at Horizon House on Dec. 5, 2005. Plaintiff contends and expressed at the time to the Board that these charges were false and were made by a tenant whose lease Plaintiff did not renew. On January 25, 2006, after Plaintiff had been working at

3

Horizon House for nearly two months, he was found not guilty at a trial in Prince George's County, Maryland.

Notwithstanding Plaintiff's criminal record and pending criminal charges, the three Board members who had interviewed Plaintiff voted to hire Plaintiff on a probationary status. Carter Dep., pp. 125, 130. Plaintiff began working at Horizon House on December 5, 2005. Ford Dep., p. 123. Plaintiff was the first African American building manager at Horizon House. Carter Dep. p. 91.

After Plaintiff began working at Horizon House, residents learned of his past assault conviction and his pending sexual assault charges. Residents expressed their concern about a person who has access to all of their units having a criminal record. They also expressed their disapproval to Mr. Carter, Ms. Morris, and Mr. Weatherman that they had voted to hire a building manager with a past conviction and pending sexual assault charges. Weatherman Dep. II, p. 326.

Plaintiff worked as the building manager at Horizon House for approximately two months, from December 5, 2005 until early February 2006. Plaintiff alleges in his complaint and in his response to Defendant's motion for summary judgment ("P. Res.") that during his time at Horizon House, he was subject to racial discriminatory treatment which ultimately ended in his termination. Specifically, Plaintiff alleges the following incidents as the basis for his claims of discriminatory retaliation and hostile work environment:

1. Defendant wanted Plaintiff to take a polygraph test in regards to the pending charges against him. P. Res., p. 5.
2. Defendant threatened to file a wrongful termination lawsuit on behalf of Ms. O'Keefe on the basis of reverse discrimination. P. Res., p. 6.

3. Defendant threatened to sue Zalco on behalf of Ms. Garretson for not releasing certain information to her about Plaintiff. P. Res., p. 7.

4. Defendant investigated possible links between Plaintiff and Mr. Carter. P. Res., pp. 7-8.

5. Ms. Garretson told Plaintiff he "needed to get some education. You need to get educated . . . ." P. Res., pp. 8. That same day, in response to Plaintiff suggesting that Ms. Garretson bring up some issues with Mr. Carter or Mr. Constant, she stated, "Boy, I'm not talking to you." P. Res., p. 9.

6. On December 17, 2005 an anonymous letter was circulated that accused Plaintiff of having a violent history and abusive character and criticized the Board for hiring him. P. Res., p. 9.

7. On December 24, 2005, a letter containing an anonymous death threat to Plaintiff and his family was delivered to Plaintiff at Horizon House. The letter, which was printed in block letters that appeared to have been cut from a magazine, stated "U R DED [sic] NIGGER UR FAMILY [sic] TOO." The death threat was investigated by the Arlington County Police Department and the FBI, but they were never able to determine who sent the letter. P. Res., p. 10.

8. Within Horizon House, a group of residents seeking to oust Mr. Carter and fire Plaintiff began to meet and called themselves the Concerned Citizens for Horizon House ("Concerned Citizens"). The Concerned Citizens met several times between January 1, 2006 and February 2, 2006 to strategize how to oust Mr. Carter and the other two Board members who voted with him. P. Res., pp. 10-11.

9. On January 17, 2006 Defendant wrote and distributed a letter to the Board marked "Confidential Attorney Client Privileged." The letter stated that "Mr. Ford was fired by his previous employer for cause." It also said that Mr. Ford "admitted wrongdoings" with regard to the pending charges in Maryland, and that the woman "alleges that the "encounters" were against her will." The letter also stated that Mr. Ford admitted to Mr. Carter that he had "consensual sexual relations with a tenant on two occasions." According to Plaintiff none of the allegations made in the letter are true. The letter was distributed to all of the residents at Horizon House. Plaintiff alleges that Defendant did not have the authority to distribute the letter. P. Res., pp. 11-13.

10. On January 19, 2006 the Concerned Citizens held a public meeting at which Defendant was present. Plaintiff alleges that during the meeting Defendant "presented all of the false allegations against Mr. Ford that he had written in his January 17, 2006 letter, but with dramatic emphasis on the false facts about the pending criminal charges." P. Res., p. 14.

11. On February 2, 2006 another meeting was held. At the meeting Defendant allegedly distributed a packet containing information about the charges against Plaintiff (this was after Plaintiff had been acquitted of these charges on January 25, 2006). Also at the meeting, pursuant to a petition from members of the Association organized by Defendant, Ms. Garretson, and Mr. Mucklow, the members voted to remove Mr. Carter, Ms. Morris, and Mr. Weatherman and elect new directors. P. Res., p. 16.

12. The new Board voted to terminate Plaintiff as building manager at Horizon House. P. Res., pp. 16-17.

13. Plaintiff claims that the new Board informed him that he had been terminated but that Zalco insisted that he return to work. On or about February 3, 2006, when Plaintiff returned to Horizon House, Mr. Conrad stated "We don't want your kind in here!" P. Res., p. 17.

II. <u>Procedural History</u>

On December 19, 2008 Plaintiff filed his complaint against defendants Zalco Realty, Inc., MDV Maintenance, Inc., Horizon House Condominium Unit Owners Association, James Mansfield, David Faison, Eric Mucklow, and Virginia O. Smith. On April 21, 2009 Plaintiff filed an amended complaint. On July 8, 2009, in an agreed order of dismissal, all defendants except for James Mansfield were dismissed from the case. On November 13, 2009 Defendant filed a motion to compel discovery and/or strike Plaintiff's claim for emotional distress damages. The Defendant filed a renewed motion to strike Plaintiff's claim for emotional distress damages on November 25, 2009. On November 30, 2009 Defendant filed its motion for summary judgment. On January 6, 2010, the Court heard argument as to the motion for summary judgment and the motion to strike plaintiff's claim for emotional distress damages. The Court took both motions under advisement.

III. <u>Standard of Review</u>

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is mandated, "after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to establish that existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There can be no genuine issue of material fact in such a situation because the complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id* at 323. The non-moving party must then go beyond the pleadings and mere allegations to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 323. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

IV. Discussion

    A. *42 U.S.C. § 1981*

As a matter of law, a plaintiff can make out a claim under 42 U.S.C. § 1981 ("Section 1981") using either direct evidence or using the burden shifting framework of *McDonnell Douglas*, 411 U.S. 792, 93 S. Ct. 1817 (1973). In order to make a Section 1981 claim by direct evidence, the plaintiff must show that (1) he is a member of a racial minority; (2) the defendant intended to discriminate against him on the basis of race; and (3) the discrimination concerned a privilege protected under § 1981. *Davis v. Am. Soc'y of Civil Eng'rs*, 330 F. Supp. 2d 647, 655 (E.D. Va. 2004).

Plaintiff in this case is African American and therefore a member of a racial minority. However, Plaintiff cannot show that Defendant intended to discriminate against him on the basis of race. Plaintiff has not presented any evidence that Defendant ever referenced his race or made

any racial derogatory comments. In the letter that Defendant sent out on January 17, 2006, there is no reference or mention of Plaintiff's race, and the same is true about any comments made by Defendant at the meeting on February 2, 2006. While Defendant may have made some comments and taken action to have Plaintiff terminated from his position as the building manager, there is no evidence that it was based on race. The much more obvious explanation is that Defendant was concerned about Plaintiff's criminal record and the pending charges against him, and that is why he wanted him removed.

Under the *McDonnell Douglas* burden shifting framework, Plaintiff has the burden of proving a *prima facie* case of discrimination. 411 U.S. at 802, 93 S.Ct. 1817. In order to make out a *prima facie* claim for discriminatory termination Plaintiff "must show that: (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004). The courts frequently grant summary judgment in favor of defendants where the undisputed evidence shows that the plaintiff's termination was not the result of the racial discrimination. *See Samuel v. Williamsburg-James City County Sch. Bd.*, 540 F. Supp. 2d 667 (E.D. Va. 2008); *Amaram v. Va. State Univ.*, 476 F. Supp. 2d 535 (E.D. Va. 2007).

Plaintiff in this case is a member of a protected class, and he was fired. However, Plaintiff was not fired by Defendant. While Defendant could theoretically be liable depending on what role he played in the termination,[1] the Court need not address that issue as it is clear that the body which did choose to terminate Plaintiff, the Horizon House Board, had more than

---

[1] *See Colline v. Rector of Univ. of Va.*, 873 F. Supp. 1008, 1015 (W.D. Va. 1995); *Harris v. Rector of Univ. of Va.*, 1993 WL 513295 at *2 (W.D. Va. 1993).

9

adequate reasons for wanting Plaintiff fired, none of which had anything to do with his race. The evidence clearly demonstrates that the Board voted to have Plaintiff replaced as building manager due to concerns over his criminal history and circumstances surrounding his hiring. Zalco Realty then ultimately terminated his employment based on the decision by the Board. *See e.g.* Affidavit of Julia Dragun, pp. 2-3, Affidavit of Bonnie Williams, ¶ 6, Affidavit of Paige McManus, ¶ 15-16, and Affidavit of Francisco Martinez-Alvarez, ¶ 15-17. Because the Court finds that no reasonable juror could conclude that Plaintiff was fired because of his race, the Court does not need to address any other elements of a claim for wrongful termination.

Plaintiff also alleges that he was the victim of a hostile work environment. In order to establish a claim for hostile work environment, a plaintiff must show (1) unwelcome conduct or harassment; (2) based on race, gender, or other protected characteristic; (3) sufficiently severe and pervasive so as to alter the conditions of employment and create a hostile work environment; and (4) some basis for imputing liability to the employer. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001); *see also Smith v. First Union Nat'l Bank*, 202 F.3d 234, 241 (4th Cir. 2000). The Fourth Circuit has stated in regard to hostile work environment claims, "[l]aw does not blindly ascribe to race all personal conflicts between individuals of different races. To do so would turn the workplace into a litigious cauldron of racial suspicion. Instead, legally sufficient evidence is required to transform an ordinary conflict such as between [an employee and employer] into an actionable claim of discrimination." *Hawkins v. PepsiCo., Inc.*, 203 F.3d 274, 282 (4th Cir. 2000). In addition, a claim seeking personal liability under § 1981 must be predicated on the actor's personal involvement. *See Colline*, 873 F. Supp. at 1015; *Harris*, 1993 WL 513295 at *2; *Davis v. Reed*, 462 F. Supp. 410, 413 (W.D. Okla. 1977). There has to be a

causal link between the defendant and the discriminatory action. *McClelland v. Facteau*, 610 F.2d 693, 696 (10th. Cir. 1979).

There are at least two reasons why Defendant cannot be held liable to Plaintiff for hostile work environment. First, Plaintiff has not shown that any of the negative or unwanted conduct exhibited toward him by anyone associated with Horizon House was based on Plaintiff's race. Plaintiff alleges that comments by individuals in the building had racial undertones, though never using explicitly racial language. In particular, Plaintiff points to the statement by Ms. Garretson to Mr. Ford that he "needed to get some education," and the statement, "boy, I'm not talking to you." Additionally, Plaintiff alleges that the comment, "we don't want your kind in here!" made by Mr. Conrad had racist undertones. However, the Court finds that these comments are more easily, and more sensibly, explained as having non-racial meanings. Mr. Conrad's comment could justifiably have been in reference to the residents of Horizon House not wanting people working there who have a criminal history. Additionally, Ms. Garretson's comments were more than likely simply statements implying that Mr. Ford needed to learn more about the procedures at Horizon House. While the Court may not be able to decipher exactly what was meant by these comments, the Court can determine that there is no indication that they were intended to be racially derogatory. The fact that a statement is not polite, or is even rude, does not make it actionable as a claim for hostile work environment. The only explicitly racial conduct that Plaintiff can point to is the anonymous death threat letter, and Plaintiff acknowledges that its author is unknown and therefore cannot be attributed to anyone in particular.

Second, even if the Court concludes these actions by residents of Horizon House were racially derogatory, there is no way to credit such actions to Defendant; and Plaintiff has presented no further evidence that any conduct committed by Defendant and directed toward

Plaintiff was based on race. Plaintiff attempts to point to the January 17 letter which was written by Defendant and then distributed to the residents. While Plaintiff may argue that the allegations in the letter are untrue and that Defendant did not have the right to distribute the letter, he cannot point to anything in the letter which is racially discriminatory in nature. The statements that Plaintiff alleges as being based on race are Plaintiff's unsuccessful attempts to read through the lines and conjure up potential underlying meanings. The Court finds that this is insufficient evidence and that Plaintiff has therefore failed to meet his burden of establishing the necessary causal link between Defendant and any discriminatory action. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment.

B.  *Emotional Distress Damages*

In Plaintiff's Amended Complaint he requests relief for the "severe emotional distress" which he has suffered as a result of the alleged violations by Defendant. In order to make out a claim for intentional infliction of emotional distress Plaintiff must prove: (1) intentional or reckless conduct by Defendant; (2) conduct that was outrageous or intolerable; (3) a causal connection between Defendant's conduct and the emotional distress; and (4) severe emotional distress. *Michael v. Sentara Health Sys.*, 939 F. Supp. 1220, 1233 (E.D. Va. 1996). Courts have held that summary judgment is appropriate when the plaintiff has produce no objectively verifiable evidence to support his allegations of severe emotional distress, such as medical records or the testimony of friends and family. *Id.*; *Dixon v. Denny's, Inc.*, 957 F. Supp. 792, 796 (E.D. Va. 1996). In this case, Defendant has propounded repeated discovery requests for medical evidence which would support Plaintiff's claim for emotional distress. Even after such requests, Plaintiff has failed to supply Defendant with any such medical documentation, or any other objectively verifiable evidence, to support a claim for emotional distress damages.

Accordingly, the Court GRANTS Defendant's Motion to Strike Plaintiff's Claim for Emotional Distress Damages.

V.  Conclusion

For the foregoing reasons, the Court finds that there are no genuine issues of material fact, and thus the Court GRANTS Defendant's Motion for Summary Judgment. The Court also GRANTS Defendant's Motion to Strike Plaintiff's Claim for Emotional Distress Damages.

/s/
Liam O'Grady
United States District Judge